IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| THE CITY OF LAWRENCE, | ) | |
| MASSACHUSETTS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| COMMONWEALTH OF MASSACHUSETTS, | ) | |
| | ) | |
| Necessary Party required by | ) | |
| 33 U.S.C.§  1319(e) | ) | |

## COMPLAINT

Plaintiff, the United States of America, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## NATURE OF ACTION

1.      This is a civil action brought against the City of Lawrence, Massachusetts ("City," "Lawrence," or "Defendant") pursuant to Sections 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1319(b) and (d).

2.      The claims arise from the Defendant's failure to comply with the CWA in the operation of its publicly-owned treatment works to collect and treat sanitary sewage and industrial wastes and in the operation of its municipal storm water collection system.

## JURISDICTION/VENUE/NOTICE

3.     This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

4.     Venue is proper in this district pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and pursuant to 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1395.

5.     Notice of the commencement of this action has been given to the Commonwealth of Massachusetts pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANT

6.     Lawrence is a political subdivision of the Commonwealth of Massachusetts and is a municipality within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), and a person within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

## NECESSARY PARTY

7.     Section 309(e) of the Act, 33 U.S.C. § 1319(e), provides:

> Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party.   Such State shall be liable for payment of any judgment or any expenses incurred as a result of complying with any such judgment entered against the municipality in such action, to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.

8.     The Commonwealth of Massachusetts is joined in this action as a necessary party pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e). The United States reserves all claims that it may have against the Commonwealth under Section 309(e).

**STATUTORY BACKGROUND**

9.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters of the United States except in compliance with, *inter alia*, the terms and conditions of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10.     Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source."

11.     Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to include, *inter alia*, "sewage . . . , biological materials . . . , and . . . municipal . . . waste discharged into water."

12.     Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States, including the territorial seas."

13.     Part 122 of Title 40 of the Code of Federal Regulations, promulgated under the CWA to regulate the NPDES permit program, defines "waters of the United States" to include, in relevant part, "[a]ll waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," and tributaries to such waters.   40 C.F.R. § 122.2(a) and (e).

14.     Pursuant to Section 402(p) of the Act, U.S.C. § 1342(p), on December 8, 1999 (64 Fed. Reg. 68722), EPA promulgated regulations at 40 C.F.R. § 122.26 that set forth NPDES permit requirements to address storm water discharges from municipal separate storm sewer systems serving populations of less than 100,000 persons.

15.     Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

16.     Section 402 of the CWA, 33 U.S.C. § 1342, provides that the Administrator may issue permits under the NPDES program for the discharge of pollutants into navigable waters of the United States upon such specific terms and conditions as the Administrator may prescribe.

17.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Sections 301(a) of the CWA, 33 U.S.C. § 1311(a) or a permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.   Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Sections 301(a) of the CWA, 33 U.S.C. § 1311(a), or a permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty for each violation each day.

## GENERAL ALLEGATIONS

18.     Lawrence is the owner and operator of a sanitary sewer collection system ("Collection System").   A portion of the Collection System is comprised of separate sanitary sewers by which residential, commercial, and industrial sewage is conveyed to a publicly-owned treatment works ("POTW") owned by the Greater Lawrence Sanitary District ("GLSD").   The remainder of the Collection System is comprised of combined sewers by which residential, commercial, and industrial sewage is conveyed along with storm water to the GLSD POTW. When storm water causes flow in the combined collection system to exceed the system's capacity,

the excess flows discharge directly to receiving waters through combined sewer overflow outfalls.

19. The Collection System contains manholes, sewer lines, and various other confined discrete conveyances which are "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14) from which pollutants are discharged.

20. Lawrence also owns and operates a municipal separate storm sewer system ("MS4"), which is a system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, and storm drains) designed to collect, convey, and directly discharge storm water to receiving waters.

21. Lawrence's MS4 outfalls, from which pollutants are discharged, are "point sources," within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

22. Lawrence's Collection System is intended to keep sewage and other wastewater in the Collection System separated from storm water in the MS4.

23. NPDES Permit No. MA0100447 ("GLSD Permit") authorizes the Greater Lawrence Sanitary District and its member communities, including the City of Lawrence, to discharge treated wastewater from the POTW.

24. Part I.E.2 of the GLSD Permit requires that the City and other member communities "[m]aintain an ongoing preventative maintenance program to prevent overflows and bypasses caused by malfunctions or failures of the separate sewer system infrastructure."

25. Part I.D of the GLSD Permit provides that discharges from point sources other than permitted outfalls are prohibited.

26. Part II.B.1 of the GLSD Permit provides that the permittee shall at all times properly operate and maintain all facilities and systems of treatment and control which are

installed or used by the permittee to achieve compliance with the conditions of the permit.

27.     On April 18, 2003, EPA issued the National Pollutant Discharge Elimination System General Permit for Storm Water Discharges from Small Municipal Separate Storm Sewer Systems ("Small MS4 General Permit") pursuant to Section 402(p) of the Act, 33 U.S.C. § 1342(p), and 40 C.F.R. § 122.26.

28.     In accordance with the Small MS4 General Permit, the City notified EPA that it was seeking coverage under the Small MS4 General Permit on March 7, 2003.

29.      EPA authorized the City to discharge storm water from its MS4 on March 1, 2004.

30.     Part I.B.2(j) of the Small MS4 General Permit specifically provides that the Small MS4 General Permit does not authorize the discharge of storm water that is mixed with non-storm water, unless the non-storm water discharge is in compliance with another NPDES permit or is allowable under Part I(F) of the Small MS4 General Permit.

31.     Part I.B.2(k) of the Small MS4 General Permit specifically provides that the Small MS4 General Permit does not authorize discharge of storm water that would cause or contribute to instream exceedance of water quality standards.

32.     Lawrence discharges from its MS4 outfalls to the Merrimack River, the Spicket River, and the Shawsheen River.   These waters are "waters of the United States" as defined in 40 C.F.R. § 122.2 and "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

33.     The Merrimack River, the Shawsheen River, and the Spicket River are Class B surface water bodies under the Massachusetts Surface Water Quality Standards ("WQSs"), 314 C.M.R. § 4.06.   Since January 2007, the applicable water quality standard for surface waters classified as Class B, set forth at 314 C.M.R. § 4.05, has provided that no single sample of surface

waters shall exceed 235 colonies per 100 milliliters ("ml") of E. coli bacteria and that no single sample of surface waters shall exceed 61 colonies per 100 ml of Enterococcus bacteria.

34.    Part II.A.1 of the Small MS4 General Permit requires permittees to develop a storm water management program implementing the minimum control measures described in Part II.B of the Small MS4 General Permit.

35.    Part II.A.2 of the Small MS4 General Permit requires that all elements of a storm water management program be implemented by the Permit's expiration.

36.    Part II.B.3(b) of the Small MS4 General Permit provides that each permittee must develop, implement, and enforce a program to detect and eliminate illicit discharges and "[t]o the extent allowable under state or local law, the permittee must effectively prohibit, through an ordinance or other regulatory mechanism, non-storm water discharges into the system and implement appropriate enforcement procedures and actions.   If a regulatory mechanism does not exist, development and adoption of such a mechanism must be included as part of the storm water management program."

37.    Part II.B.3(c) of the Small MS4 Permit provides that "[t]he permittee must develop and implement a plan to detect and address non-storm water discharges, including illegal dumping, into the system."

38.    Part II.B.4 of the Small MS4 General Permit provides that "[t]he permittee must develop, implement, and enforce a program to reduce pollutants in any storm water runoff to the MS4 from construction activities that result in a land disturbance of greater than or equal to one acre. The permittee must include disturbances less than one acre if part of a larger common plan."

39.    Part II.B.4(a) of the Small MS4 General Permit provides that the construction site

storm water run-off control program must include "[t]o the extent allowable under state or local law, an ordinance or other regulatory mechanism to require sediment and erosion control at construction sites.   If such an ordinance does not exist, development and adoption of an ordinance must be part of the program."

40.     Part II.B.5 of the Small MS4 General Permit provides that "[t]he permittee must develop, implement and enforce a program to address storm water runoff from new development and redevelopment projects that disturb greater than one acre and discharge into the municipal system."

41.     Part II.B.5(a) of the Small MS4 General Permit specifies that the program must include "[t]o the extent allowable under state or local law, an ordinance or other regulatory mechanism to address post construction runoff from new development and redevelopment.   If such an ordinance does not exist, development and adoption of an ordinance must be part of the program."

42.     Illicit connections to Lawrence's MS4 result in the discharge of pollutants to waters of the United States from Lawrence's MS4 outfalls.   Illicit connections to Lawrence's MS4 are either direct connections (e.g., wastewater piping either mistakenly or deliberately connected to the storm drains) or indirect connections (e.g., infiltration into the MS4 from cracks in Lawrence's Collection System).

43.     Discharges of untreated wastewater combined with storm water from Lawrence's MS4 contribute high levels of pollutants, including sewage, heavy metals, toxics, oil and grease, solvents, nutrients, viruses, and bacteria to water bodies receiving discharges from Lawrence's MS4 outfalls.

44.     Lawrence provided a summary of its Storm Water Management Program to EPA along with the City's NPDES Storm Water General Permit Notice of Intent for Discharges from Small Municipal Separate Storm Sewer Systems on August 20, 2003.   In accordance with the Small MS4 General Permit, among the controls Lawrence identified in its Storm Water Management Program summary are implementation of an illicit discharge detection and elimination program, including development of an ordinance to control illicit connections, and development of a construction site sediment and erosion control ordinance.

45.      The Small MS4 General Permit expired on May 1, 2008.   Under 40 C.F.R. § 122.6, the Town may continue to discharge in accordance with the Small MS4 General Permit.

## COUNT ONE
(Unauthorized Discharges of Pollutants From MS4 Outfalls)

46.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 45 above.

47.     From at least March 1, 2010, through the present, numerous illicit connections to Lawrence's MS4 have existed that resulted in the discharge of untreated wastewater containing pollutants, including sewage, from the City's MS4 outfalls to waters of the United States.

48.     Results from samples taken on multiple occasions from Lawrence's MS4 outfalls between October 23, 2007, and November 14, 2012, demonstrate that the City is discharging pollutants, including E. coli and/or Enterococcus bacteria in elevated concentrations and one or more of surfactants, ammonia, and/or selected pharmaceuticals and personal care products ("PPCP"), all indicative that the pollutants from Lawrence's MS4 outfalls are from sewage and of human origin.

49.     Fecal coliform, E. coli, and Enterococcus bacteria; sewage; biological materials;

and municipal waste are "pollutants" within the meaning of Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

50.     The discharge of non-storm water from Lawrence's MS4 outfalls is not authorized by its MS4 Permit regardless of whether it commingles with storm water.   Further, these discharges are not otherwise covered by a separate NPDES permit.

51.     The discharges of pollutants from Lawrence's MS4 outfalls, as described above, are violations of Section 301(a) of the CWA, 33 U.S.C § 1311(a).

52.     Upon information and belief, Lawrence will continue to discharge pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C § 1311(a), unless restrained by this Court.

53.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Lawrence is liable for injunctive relief and for civil penalties not to exceed $32,500 per day for each violation occurring after March 15, 2004, but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## COUNT TWO
(Sanitary Sewer Overflow Discharges)

54.      The United States realleges and incorporates by reference the allegations of paragraphs 1 through 53 above.

55.      On at least thirteen occasions between December 8, 2009, and July 26, 2012, Lawrence's Collection System experienced sanitary sewer overflows ("SSOs"), which resulted in the discharge of untreated wastewater containing pollutants, including raw sewage, from point sources within the Collection System to waters of the United States.

56.     SSOs occurred during which overflows of pollutants (i.e., sewage and municipal waste) from the Lawrence's Collection System were discharged directly to a water of the United States or to the City's MS4, from which the untreated wastewater was discharged to a water of the United States.

57.     Lawrence's SSOs discharged to the Merrimack River, the Shawsheen River, and the Spicket River, all of which are "waters of the United States" as defined in 40 C.F.R. § 122.2 and are "navigable waters" under Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

58.     Lawrence's discharge of untreated sewage constitutes a "discharge of pollutants" within the meaning of Section 502(12) of the CWA, 33 U.S.C. § 1362(12) from "point sources," as defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

59.     None of Lawrence's SSO discharges to waters of the United States was authorized by a NPDES permit or any provision of the CWA.

60.     The SSO discharges were, therefore, violations of Section 301(a) of the CWA, 33 U.S.C § 1311(a).

61.     Upon information and belief, Lawrence will continue episodically to discharge pollutants to waters of the United States in violation of Section 301(a) of the CWA, 33 U.S.C § 1311(a), unless restrained by this Court.

62.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Lawrence is liable for injunctive relief and for civil penalties not to exceed 32,500 per day for each violation occurring after March 15, 2004, but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

## COUNT THREE
(MS4 Permit Violations)

63.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 62 above.

64.     From October 23, 2007 to November 14, 2012, 39 of 43 samples taken from Lawrence's discharges from its MS4 outfalls to the Merrimack River, the Shawsheen River, and the Spicket River exceeded the Massachusetts WQSs for E. Coli, and/or Enterococcus bacteria. These discharges violated the terms and conditions of its MS4 Permit.

65.     The City failed, to the extent allowable under state or local law, to effectively prohibit, through an ordinance or other regulatory mechanism, non-storm water discharges into the system by the Small MS4 General Permit's expiration date.   To date, Lawrence has failed to adopt such an ordinance or regulatory mechanism.

66.     As of April 17, 2014, Lawrence has identified and eliminated only five illicit connections to its MS4.   Monitoring results demonstrate that other illicit connections exist.   That the City has identified and eliminated only five illicit connections, in conjunction with the presence of contaminated storm water in several outfalls, demonstrates that Lawrence has failed to develop and implement a plan to detect and address non-storm water discharges as required by Part II.B.3(c) of the Small MS4 General Permit.

67.     The City failed, to the extent allowable under state or local law, to adopt an ordinance or other regulatory mechanism to require sediment and erosion control at construction sites prior to the expiration of the Small MS4 General Permit.   To date, Lawrence has failed to adopt such an ordinance or other regulatory mechanism.

68.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Lawrence is liable for injunctive relief and for civil penalties not to exceed $32,500 per day for each violation occurring after March 15, 2004, but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

### COUNT FOUR
(Failure to Properly Operate & Maintain Collection System)

69.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 68 above.

70.     Lawrence has not developed a written collection system operation and maintenance plan, manual, or any written standard operating procedures that it uses to operate and maintain its sanitary sewage collection system.

71.     An inspection performed by EPA determined that the City performs sewer cleaning on a reactive basis, responding to customer complaints and field crew observations rather than implementing regularly scheduled preventive maintenance.

72.     As a result of the lack of a preventative maintenance program, frequent blockages occur in the City's sanitary collection system.   EPA estimates that approximately 100 backups to private buildings occurred during the period from January 2011 through June 2012 due to blockages in the sanitary collection system.

73.     EPA observed practices for responding to sewer blockages during its inspection that did not conform to industry-standard best practices.   When a blockage was encountered in the sanitary collection system, City staff broke up blockages and allowed the debris to flow downstream.   Industry standard practice is to collect debris, so it cannot cause additional

blockages in the sanitary collection system.

74.    The City has not developed or implemented a collection system inspection program.   The City does not conduct any regularly scheduled inspections of the collection system using closed circuit television equipment or other means of inspection. As a result of the lack of an inspection program, the City is not able to properly assess the condition of its collection system and identify defects and areas of concern before they result in a collection system failure.

75.    These circumstances demonstrate that the City has not maintained a preventative maintenance program as required by Part I.E.2 of the GLSD Permit.

76.    The City's failure to maintain a preventative maintenance program as required by Part I.E.2 of the GLSD Permit is a violation of the GLSD Permit.

77.    Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Lawrence is liable for injunctive relief and for civil penalties not to exceed $32,500 per day for each violation occurring after March 15, 2004, but prior to and including January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009.

### PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that the Court grant the following relief:

1.    Permanently enjoin Lawrence, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), from any and all future violations of the CWA and from discharges of pollutants except as authorized by a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342;

2.      Order the Lawrence to comply with all requirements of its Small MS4 General Permit and

GLSD Permit;

3.      Order the City to pay a civil penalty not to exceed $32,500 per day for each violation

occurring after March 15, 2004, but prior to and including January 12, 2009, and $37,500 per day

per violation occurring after January 12, 2009;

4.      Award the United States its costs in this action; and

5.      Grant such other relief as the Court deems just and proper.

Respectfully submitted,

CARMEN ORTIZ
United States Attorney

By:     /s/ *Susan M. Poswistilo*
        SUSAN M. POSWISTILO (BBO # 565581)
        Assistant U.S. Attorney
        John J. Moakley U.S. Courthouse
        One Courthouse Way, Ste. 9200
        Boston MA   02210
        (617) 748-3103
        susan.poswistilo@usdoj.gov


        ELLEN MAHAN
        Deputy Chief
        Environmental Enforcement Section

        BRIAN G. DONOHUE
        Senior Attorney
        Environmental Enforcement Section
        P.O. Box 7611
        Washington, DC   20044-7611
        (202) 514-5413